AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
## for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of White 2017 Ford Econoline with Arizona license plate AH21952 and Vehicle Identification Number (VIN) 1FDXE4FS3HDC03853 | Case No.  26-04094MB |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before ___April 6, 2026___ *(not to exceed 14 days)* ☒ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona</u>.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for ___30___ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:_____

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2026.03.23 19:00:42 -07'00'

_____
*Judge's signature*

City and state: <u>Flagstaff, Arizona</u>       <u>Honorable Camille D. Bibles, U.S. Magistrate Judge</u>
*Printed name and title*

1

## ATTACHMENT A

### *Property to be searched*

The vehicle to be searched is a white 2017 Ford Econoline with Arizona license plate AH21952 and Vehicle Identification Number (VIN) 1FDXE4FS3HDC03853 ("**Subject Vehicle 1**") in HSI's possession since on or about March 2, 2026. **Subject Vehicle 1** is currently located at the BNSF in Flagstaff, Arizona.





*Subject Vehicle 1*

13

## ATTACHMENT B

### *Items to be Seized*

1.      United States currency and coins, negotiable instruments, and financial instruments.

2.      Books, records, invoices, receipts, records of real estate transactions, records reflecting ownership/possession/use of motor vehicles, real estate, and personal property; bank statements, statements from credit unions, savings and loan institutions, money market accounts, and other financial institutions, canceled checks, deposit items and related reports, passbooks, Western Union "money grams" money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money.

3.      Paraphernalia for packaging, and distributing stolen property, including boxes, labels, wrapping materials (new and used), tape, and other evidence used by persons to transport stolen property or its packaging.

4.      Indicia of ownership, occupancy, and/or the use of the residence/place where the stolen property is being delivered/sold, including such things as bills or pieces of mail.

5.      Tools used for burglaries including, but not limited to, bolt cutters, grinders, pry bars and other tools to cut, pry or force open locked containers and locks.

6.      Stolen property associated with train cargo burglaries including, but not limited to, consumer goods and electronics such as televisions, computers, laptops, shoes, and water filters.

7.      Photographs, including still photos, negatives, digital photos on storage media, videotapes, films, undeveloped film and the contents therein, and slide, in particular, photographs of conspirators, assets, stolen property, trains and train tracks and the use and handling of weapons.

8.      Any papers, notes, or other records referencing people or locations in cities, counties, states and foreign countries, including Mexico related to burglarizing trains.

9.      Papers, tickets, notes, receipts, itineraries, boarding passes and other items relating to travel, including travel to states, cities and counties and other foreign countries including Mexico.

10.      Any and all firearms.

11.      Computers, cellular telephones, tablets, and other media storage devices, such as thumb drives, cellular phones, electronic devices, CD-ROMs, DVDs, Blu Ray disks, memory cards, and SIM cards (hereafter referred to collectively as "electronic storage media");

12.      Records evidencing ownership or use of electronic storage media, including sales receipts, registration records, and records of payment;

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data including electronic devices); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as prints, slides, negatives, videotapes, motion pictures, or photocopies). This shall include records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the computer, electronic device, or other storage medium.   This warrant authorizes a review of records and information seized,

15

copied or disclosed pursuant to this warrant to locate evidence, fruits, and instrumentalities described in this warrant.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>White 2017 Ford Econoline with Arizona license plate<br>AH21952 and Vehicle Identification Number (VIN)<br>1FDXE4FS3HDC03853 | Case No.  26-04094MB<br><br>**(Filed Under Seal)** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 659 | Possession or Receipt of Goods Stolen from Interstate Shipment |
| 18 U.S.C. § 2 | Aiding and Abetting |

The application is based on these facts:

**See attached Affidavit of Special Agent Gustavo Barrera**

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Patrick Sloane *PTS*

Type tex GUSTAVO A BARRERA  Digitally signed by GUSTAVO A BARRERA Date: 2026.03.20 14:43:27 -07'00'
_____
*Applicant's Signature*

Gustavo Berrera, Special Agent-H.S.I.
_____
*Printed name and title*

Sworn to me telephonically.

Camille D. Bibles  Digitally signed by Camille D. Bibles Date: 2026.03.23 18:59:33 -07'00'
_____
*Judge's signature*

Date: _____

City and state: Flagstaff, Arizona

Honorable Camille D. Bibles, U.S. Magistrate Judge
_____
*Printed name and title*

## ATTACHMENT A

### *Property to be searched*

The vehicle to be searched is a white 2017 Ford Econoline with Arizona license plate AH21952 and Vehicle Identification Number (VIN) 1FDXE4FS3HDC03853 ("**Subject Vehicle 1**") in HSI's possession since on or about March 2, 2026. **Subject Vehicle 1** is currently located at the BNSF in Flagstaff, Arizona.

 



*Subject Vehicle 1*

## ATTACHMENT B

### *Items to be Seized*

1.     United States currency and coins, negotiable instruments, and financial instruments.

2.     Books, records, invoices, receipts, records of real estate transactions, records reflecting ownership/possession/use of motor vehicles, real estate, and personal property; bank statements, statements from credit unions, savings and loan institutions, money market accounts, and other financial institutions, canceled checks, deposit items and related reports, passbooks, Western Union "money grams" money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money.

3.     Paraphernalia for packaging, and distributing stolen property, including boxes, labels, wrapping materials (new and used), tape, and other evidence used by persons to transport stolen property or its packaging.

4.     Indicia of ownership, occupancy, and/or the use of the residence/place where the stolen property is being delivered/sold, including such things as bills or pieces of mail.

5.     Tools used for burglaries including, but not limited to, bolt cutters, grinders, pry bars and other tools to cut, pry or force open locked containers and locks.

6.     Stolen property associated with train cargo burglaries including, but not limited to, consumer goods and electronics such as televisions, computers, laptops, shoes, and water filters.

7.     Photographs, including still photos, negatives, digital photos on storage media, videotapes, films, undeveloped film and the contents therein, and slide, in particular, photographs of conspirators, assets, stolen property, trains and train tracks and the use and handling of weapons.

14

8.      Any papers, notes, or other records referencing people or locations in cities, counties, states and foreign countries, including Mexico related to burglarizing trains.

9.      Papers, tickets, notes, receipts, itineraries, boarding passes and other items relating to travel, including travel to states, cities and counties and other foreign countries including Mexico.

10.      Any and all firearms.

11.      Computers, cellular telephones, tablets, and other media storage devices, such as thumb drives, cellular phones, electronic devices, CD-ROMs, DVDs, Blu Ray disks, memory cards, and SIM cards (hereafter referred to collectively as "electronic storage media");

12.      Records evidencing ownership or use of electronic storage media, including sales receipts, registration records, and records of payment;

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data including electronic devices); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as prints, slides, negatives, videotapes, motion pictures, or photocopies). This shall include records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the computer, electronic device, or other storage medium.   This warrant authorizes a review of records and information seized,

15

copied or disclosed pursuant to this warrant to locate evidence, fruits, and instrumentalities described in this warrant.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Gustavo A. Barrera, a Special Agent for Homeland Security Investigations (HSI), being duly sworn, hereby depose and state as follows:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.    Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search a white 2017 Ford Econoline with Arizona license plate AH21952 and Vehicle Identification Number (VIN) 1FDXE4FS3HDC03853 (hereinafter the "**Subject Vehicle 1**") currently located at the BNSF lot in Flagstaff, Arizona, as further described in Attachment A, in order to search for and seize the items outlined in Attachment B, which represent evidence, fruits, and/or instrumentalities of the criminal violations further described below.

2.    I am a Special Agent with the United States (U.S.) Department of Homeland Security (DHS) Homeland Security Investigations (HSI) Flagstaff, AZ, and have been employed since June 2024. During my tenure as a Special Agent, I completed a 12-week Criminal Investigator Training Program and a 13-week HSI Special Agent Training Program at the Federal Law Enforcement Training Center (FLETC). Prior to my tenure as a Special Agent, I served as a police officer in Arlington County, Virginia for approximately I year. I graduated from Marymount University with a Bachelor of Arts in Criminal Justice and a Master of Arts in Forensic Psychology. I am a law enforcement officer of the U.S., and I am empowered by law to conduct criminal investigations, make arrests, and serve search and arrest warrants.

3.    As a Special Agent with HSI, Your Affiant investigates criminal violations of United States law, including import and export violations, controlled substances law violations, and money laundering violations. Your Affiant is familiar with investigations involving stolen vehicle organizations, theft rings, possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug

transactions. As an HSI Special Agent, Your Affiant has been trained in conducting narcotics and money laundering investigations and received specialized training concerning violations of the Controlled Substances Act contained within Title 21 of the U.S. Code. Your Affiant is currently assigned to the HSI Flagstaff Office located in Flagstaff, Arizona, where we investigate transnational criminal organizations to include money laundering and drug trafficking organizations operating throughout the U.S.

4.      By virtue of my employment as a Special Agent, Your Affiant has performed various tasks, which include, but are not limited to:

a.      functioning as a surveillance agent, thus observing and recording movements of persons involved in violations of United States Code as well as violations of Arizona State law;

b.      functioning as a case agent, entailing the supervision of specific investigations involving various crimes throughout the United States; and

c.      conducting complex investigations involving transnational criminal organizations committing various crimes throughout the United States.

5.      I have consulted with other experienced investigators concerning the practices of transnational criminal organizations and the best methods of investigating them. In preparing this affidavit, I have conferred with other Special Agents and law enforcement officers. Furthermore, I have personal knowledge of the following facts or have learned them from the individual(s) mentioned herein.

6.      Based on the below facts, Your Affiant submits there is probable cause that **Subject Vehicle 1** presently contains goods stolen from interstate shipments, other objects to facilitate the criminal activity including electronic devices, and evidence of violations

of Title 18, United States Code (U.S.C.) § 659, Possession or Receipt of Goods Stolen from Interstate Shipment and 18 U.S.C. § 2 Aiding and Abetting.

## II.    BASIS FOR PROBABLE CAUSE - BACKGROUND

7.    Over the past 15 years, several Transnational Criminal Theft Organizations have been burglarizing Burlington Northern Santa Fe (BNSF) Railway as well as Union Pacific trains throughout the Southwest of the United States to include Arizona. These organizations consist primarily of Mexican citizens from the Mexican State of Sinaloa who operate out of Arizona and California, with extensive connections throughout California, Arizona, and New Mexico. The train burglaries have increased in frequency over the past two years.

8.    Scouts usually target high value containers on the BNSF railway on eastbound trains that parallel Interstate 40 near Needles, California. Once the organization targets a particular train, they typically find a location for several train burglars to get on the train. Once on the train, the burglars open container doors while the train is moving and target merchandise to steal such as electronics, tools, and apparel. The burglars often target containers with visible high-security locks and use reciprocating saws, bolt-cutters, or similar tools to defeat the locking mechanisms.  Once the burglars target a specific container that has desirable merchandise, the burglars often cut train braking system air hose, which causes the train to go into an emergency stop (commonly referred to as "UDE"), which is a sudden and dramatic application of all the brakes on the train. By cutting an air hose, the burglars control when and where the train is stopped in order to unload the cargo they target to burglarize. This act is very dangerous and can cause a train to derail, which could ultimately cause serious injury or death to BNSF employees or citizens.

9.      The burglars also sabotaged the train signal system by cutting the locks off signal boxes and then by cutting the control wires inside. This is a dangerous act that creates dark areas on the rail network, requiring non-traditional train dispatching functions and extensive repairs. Trains carrying high-value merchandise travel at speeds up to 70 MPH on multiple tracks in both east and west direction. The train crews and train dispatchers rely on the signals for safe transportation.

10.     The burglars on the train communicate via cellular telephones with surveillance and/or pick up crew(s) traveling in vehicles following the train.  The surveillance and/or pick up crew(s) travel follow the train until it stops, either at a natural stopping point or when the burglars cause the stop, to unload the freight.  Once the burglars unload the merchandise from the container on the train, the burglars often hide the stolen items in fields or brush adjacent to the BNSF tracks until it can be picked up. The location of the stolen merchandise is then shared by the train burglars with the surveillance and/or pick up crews.  A U-Haul, box truck, cargo panel van, or pickup trucks are used to pick up the stolen merchandise if law enforcement is not detected. Once the stolen merchandise has been picked up, it is usually transported to California where it is sold or fenced to wholesale online retailers such as third-party Amazon and eBay resellers.

## III.    CURRENT INVESTIGATION

11.     On March 2, 2026, BNSF Train ZLACMEM801A was traveling eastbound from California when it stopped near Joseph City, Arizona at railroad marker 267.4. From approximately 5:30pm to 6:20pm the train was stationary. During this stoppage, a Customs and Border Protection (CBP) air asset, HSI special agents, local law enforcement, and BNSF agents observed approximately 6 individuals unloading master cases from a container SEGU5867101. This container was located approximately 23

5

containers from the front of the train. The CBP air asset's recording capabilities was able to capture the event.

12.   Your Affiant later learned that the master cases from container SEGU5867101 held approximately 6 pairs each of unreleased Nike Air Jordan model "Sons of Mars Low" each with suggested retail value of $165 for a total of approximately 1,800 pairs worth approximately $300,000.   Your Affiant later verified that on or about January 28, 2026, container SEGU5867101 was transported via ship from Vũng Tàu, Vietnam, and arrived at Los Angeles, California on February 21, 2026, prior to being placed on BNSF Train ZLACMEM801A.

13.   At approximately 05:54 p.m., **Subject Vehicle 1** was initially spotted parked off the side of the road on Hibbard Road near mile marker 264 along I-40. Surveillance revealed **Subject Vehicle 1** remained parked until the unloaded master cases were to be stolen.

14.   At approximately 08:47 p.m., the CBP air asset observed a dark-colored van bearing Arizona license plate CH84269 and **Subject Vehicle 1** arrive at the location of the unloaded master cases. The CBP air asset then observed 8 individuals load the master cases into the rear of the box truck. The area in which the theft occurred is a remote area and not heavily populated.

15.   At approximately 8:58 p.m., approximately 7 of the individuals were observed entering the dark colored van while approximately 1 individual was observed entering **Subject Vehicle 1** (later determined to be Jose Angel Rodriguez-Hurtado ("RODRIGUEZ"). Both vehicles began traveling westbound on the railroad frontage road, and law enforcement began converging to apprehend the suspects.

16.   At approximately 8:59 p.m., the subjects fled from the van and box truck and ran on foot into the desert at approximately mile marker 272 from interstate 40. The

6

CBP air asset then assisted law enforcement by directing them to the location of each of the 8 individuals. At approximately 10:30 p.m., law enforcement apprehended the driver of **Subject Vehicle 1**: RODRIGUEZ and the driver of the van: Javier Eduardo Valdez-Fierro ("VALDEZ"). By approximately 11:25 p.m. the remaining 6 suspects had been apprehended and were identified as: Jordy Manuel Verdugo-Gutierrez ("VERDUGO"), Pedro Elieser Sotelo Veliz ("SOTELO"), Yamir Eduardo Hernandez-Luzanilla ("HERNANDEZ"), Christian Andres Castro-Torres ("CASTRO"), Alberto Jordan Atienzo-Otero ("ATIENZO"), and Leobardo Martinez-Vazquez ("MARTINEZ").

17.    During a search incident to arrest, six of the suspects had cellular devices on their persons: VALDEZ (driver of the dark van), CASTRO, ATIENZO, SOTELO, MARTINEZ and HERNANDEZ. No cellular device was located on the driver of **Subject Vehicle 1** (RODRIGUEZ)'s person.

18.    At approximately 09:45 p.m., a safety sweep of **Subject Vehicle 1** was conducted by federal and local law enforcement. The safety sweep revealed the rear compartment of **Subject Vehicle 1** contained approximately 200 master cases STYLE number: 580603-002, open-source research shows that STYLE: 580603-002 is the Nike model "Sons of Mars Low" each pair has an MSRP of $165. In addition to the master cases found in **Subject Vehicle 1**, approximately 100 additional master cases STYLE number: 580603-002 were discovered in a culvert located near the burglary site.

*Interview Statements: VALDEZ, CASTRO, SOTELO and ATIENZO*

### A. VALDEZ

19.    At approximately 2:30 a.m., VALDEZ (the driver of the dark colored van) was interviewed. Prior to being interviewed VALDEZ was advised of his *Miranda* warnings which VALDEZ knowingly waived. What follows is not verbatim: VALDEZ stated he was hired by a friend that he only knew as "Manuel" and was offered $350 to follow the train. VALDEZ stated he was instructed to drive the black van, and VALDEZ

confirmed this was the same black van used in the train theft. VALDEZ stated he took possession of the van on Saturday, February 28, 2026, and arrived in Flagstaff prior to sunrise. VALDEZ admitted he was also instructed to assist in unloading master cases.

20.    Law enforcement asked VALDEZ if VALDEZ used his cellphone to communicate with any of the other suspects or with "Manuel"; VALDEZ initially stated that he had two phone numbers but later retracted that he only had the phone number of a person named "Angel", who is possibly RODRIGUEZ. VALDEZ gave consent for law enforcement to access his phone during the interview in order to confirm the contact number for "Angel". After confirming the contact number for "Angel", VALDEZ denied knowing any of the other suspects and claimed that at the time of his arrest he had been living in the Phoenix metropolitan area.  During the consensual search of VALDEZ's phone, a navigation app was open when the phone was initially unlocked. The app had coordinates at the approximate location of the theft site. When asked about the GPS coordinates, VALDEZ stated he manually dropped a pin after following the train.

### B.  CASTRO

21.    At approximately 4:00 a.m., CASTRO was advised of his *Miranda* warnings which CASTRO knowingly waived. What follows is not verbatim: CASTRO denied knowing any of the other arrested suspects and claimed he was currently residing in the Phoenix metropolitan area. CASTRO claimed an unknown man CASTRO had met at a Chandler Circle K offered CASTRO $200 for a job in Flagstaff. CASTRO stated he understood his role was to unload master cases into **Subject Vehicle 1**. CASTRO admitted he used his cellular phone to receive instructions regarding the train theft from someone named "Isa", CASTRO gave verbal consent to law enforcement to view his phone during the interview. CASTRO showed what appeared to be audio messages between "Isa" and CASTRO, CASTRO stated that "Isa" traveled to Flagstaff, but CASTRO was unsure what

8

"Isa" was doing other than possibly coordinating the theft. CASTRO acknowledged that he had received phone calls from numerous unknown numbers and claimed he did not know who the callers were.

### C.  SOTELO

22.    At approximately 4:36 a.m., SOTELO was advised of his *Miranda* warnings which SOTELO knowingly waived. What follows is not verbatim: SOTELO claimed he resided in the Phoenix metropolitan area and denied knowing any of the other arrested suspects. SOTELO claimed that a friend that SOTELO only knew as "Suegro" offered SOTELO a job in Flagstaff. SOTELO claimed he met "Suegro" via an unknown friend when he needed help picking up a "package". SOTELO stated he was instructed by "Suegro" to drive a dark colored sedan to Flagstaff and then was further directed to a rest area east of Flagstaff where SOTELO was told to park the vehicle and to wait until SOTELO was instructed to proceed to the site of the train theft. SOTELO granted verbal consent to search his phone during the interview, and law enforcement observed a contact number for "Suegro". SOTELO admitted that he assisted with loading the master cases into **Subject Vehicle 1**.

### D.  ATIENZO

23.    At approximately 03:10 a.m., ATIENZO was advised of his *Miranda* warnings which ATIENZO knowingly waived. What follows is not verbatim: ATIENZO claimed he was invited by a friend to work in Flagstaff, Arizona. ATIENZO claimed he did not know what job was, nor how much he would be paid. When asked about an ID found in ATIENZO's wallet which bore a different name, ATIENZO stated "I'm not going to answer that."

//

//

9

*Attempted Interviews of RODRIGUEZ, HERNANDEZ, MARTINEZ and VERDUGO*

24.     Law enforcement attempted to interview the driver of **Subject Vehicle 1**-RODRIGUEZ, as well as the other passengers in the dark van: HERNANDEZ, MARTINEZ and VERDUGO. Prior to each attempted interview, each suspect was advised of his *Miranda* warnings. Each suspect invoked their right to remain silent, and the interviews were terminated. Cellular devices from MARTINEZ and HERNANDEZ were taken into evidence (similar to RODRIGUEZ, no cellular device was located on VERDUGO's person).

## IV.     ITEMS TO BE SEIZED

25.     Based upon the facts contained in this Affidavit, Your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in **Subject Vehicle 1**.

26.     Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information, Your Affiant knows the following:

a.     Members of the Transnational Criminal Theft Organizations that are currently burglarizing trains often keep merchandise that they have been burglarized off trains and transport that merchandise to third party buyers and retailers.

b.     Members of the Transnational Criminal Theft Organizations members often possess burglary tools including but not limited to bolt cutters, grinders, pry bars and other tools to cut, pry or force open locked containers and locks.

c.     Transnational Criminal Theft Organizations and persons involved in the burglarizing trains often possess firearms and other weapons, both legal and illegal, in order to protect their person, and the merchandise

10

they have stolen.  Transnational Criminal Theft Organizations members commonly maintain such firearms and weapons where they have ready access to them, such as on their person and in their vehicles.  In addition, other firearm-related items, such as gun pieces, ammunition, gun cleaning items or kits, holsters, ammunition belts, original box packaging, targets, expended pieces of lead, photographs of firearms, and paperwork showing the purchase, storage, disposition, or dominion and control over firearms, ammunition, and related items are commonly possessed by Transnational Criminal Theft Organizations members.

d.      Transnational Criminal Theft Organizations members often maintain paper records of their burglaries and money laundering activities. Your Affiant knows that such records are commonly maintained for long periods of time and therefore are likely to be found at the Subject Vehicle.

In addition to items which may constitute evidence, fruits and/or instrumentalities of the crimes set forth in this Affidavit, Your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over **Subject Vehicle 1**, including rent receipts, utility bills, telephone bills, addressed mail, personal identification, keys, purchase receipts, sale receipts, photographs, vehicle pink slips, and vehicle registration.

//
//
//
//
//
//
//

11

## V.    CONCLUSION

27.    Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence, fruits, and/or instrumentalities of violations of 18 U.S.C. § 659, Theft from Interstate Commerce and 18 U.S.C. § 2 Aiding and Abetting, are likely to be found at **Subject Vehicle 1**, which is further described in Attachment A.

GUSTAVO A BARRERA
Digitally signed by GUSTAVO A BARRERA
Date: 2026.03.20 14:42:49 -07'00'

Special Agent Gustavo A. Barrera
Homeland Security Investigations

Subscribed electronically and sworn telephonically this __23__ day of March, 2026.

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2026.03.23 18:58:20 -07'00'

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge

12